```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION


FINANCIAL FEDERAL CREDIT, INC., §
                                §
            Plaintiff,          §
                                §
v.                              §      CIVIL ACTION NO. H-05-3832
                                §
JOHNSON TUM and GARY UNG,       §
                                §
            Defendants.         §
```

MEMORANDUM AND ORDER

Pending is Plaintiff Financial Federal Credit, Inc.'s Motion for Summary Judgment (Document No. 9). After having carefully considered the motion, response, supplemental response, reply, and the applicable law, the Court concludes that the motion should be granted.

I. Background

Plaintiff Financial Federal Credit, Inc. ("Plaintiff") brings this action to enforce a guaranty agreement against Defendants Johnson Tum ("Tum") and Gary Ung ("Ung") (collectively, "Defendants") and collect a deficiency owed on a promissory note.

On April 28, 1998, Defendants executed and delivered to Plaintiff a continuing guaranty (the "Guaranty") of the obligations of Computerized Machine Technologies, Inc. ("Computerized").

Document No. 9 ex. 1 ¶ 8; ex. 1-D.  The Guaranty provides, in pertinent part:

(1) that Ung "agrees to be directly and unconditionally liable to [Plaintiff] (without reduction by reason of any defense, setoff or counterclaim of [Computerized]) for the due payment and performance of all Obligations, and any and all future renewals, modifications, amendments, extensions, increases, and/or supplements thereof, whether previously, contemporaneously or subsequently created or incurred . . . whether now or in the future arising, existing, incurred, contracted or owing" by Computerized to Plaintiff;

(2) that the Guaranty may be enforced against Ung without Plaintiff's "prior resort to any other right, remedy, or security and shall continue notwithstanding any repossession or other disposition of security";

(3) that the liability of Ung "shall not be released, impaired or satisfied for any reason until all Obligations of [Computerized] have been fully paid and performed, with interest";

(4) that the Guaranty "is a continuing guaranty which shall remain in full force and effect, . . . until full payment and performance of all Obligations, and thereafter until [Plaintiff's] actual receipt of a written notice of termination of [Ung's] obligations hereunder," with any such notice of termination affecting only transactions arising, incurred, or created after Plaintiff's receipt thereof;

(5) that all notices to which Ung may be entitled, including presentment, demand, notice of intent to accelerate, etc., are all expressly waived.

Id. ex. 1-D.

In 2001, Plaintiff agreed to provide financing to Computerized for the acquisition and/or purchase of certain equipment (the "Equipment"). Thus, on January 30, 2001, Computerized executed and delivered to Plaintiff a promissory note in the original amount of $299,580 (the "Note"). Document No. 9 ex. 1-A. The Note was to be paid in 60 monthly installments of $4,993 each commencing on February 25, 2001. Id.[1] According to Plaintiff, the Guaranty formed part of the consideration for, and Plaintiff relied upon the Guaranty in, accepting and funding the Note. Id. ex. 1 ¶ 8. In addition, the Note was secured by a security agreement (the "Agreement"), wherein Computerized granted Plaintiff a security interest in the Equipment as well as a general security interest in all of Computerized's present and future-acquired goods, inventory, accounts, equipment, accounts receivables, etc. Id. ex. 1-B.[2] Both the Note and the Agreement provide for acceleration of all indebtedness due under the terms of the Note in the event of default by Computerized. Id. exs. 1-A, 1-B.

When Computerized failed to make payments as they became due, Plaintiff exercised its option to accelerate the unpaid balance of

---

[1] By letter agreement dated March 29, 2001, the Note was amended to reflect a change in the due date of the first installment to February 15, 2001. Document No. 9 ex. 1-C.

[2] Plaintiff perfected its security interests arising from the Note and Agreement by filing UCC-1 financing statements in all appropriate jurisdictions and locations. Document No. 9 ex. 1 ¶ 6.

the indebtedness due under the Note.  Id. ex. 1 ¶ 12.  Plaintiff then took possession of and disposed of the Equipment by public sales held on Tuesday, April 22, 2003, and Wednesday, July 23, 2003.  Id. ex. 1 ¶ 13.  Plaintiff notified Ung of the April 22, 2003, sale by letter dated April 9, 2003, sent by certified mail, return receipt requested, and by first class mail, postage prepaid to Ung at his address in Long Beach, California.  Id. ex. 1 ¶ 14; ex. 1-E.  The notice sent by certified mail was signed for by Ung on April 14, and the notice sent by first class mail was never returned to Plaintiff.  Id.  Notice of the sale was also published in The Orange County Register on April 13, 2003, and April 20, 2003.  Id. ex. 1 ¶ 15; ex. 1-F.  Additionally, Plaintiff notified other potentially interested parties of the public sale by certified and/or first class mail.  Id. ex. 1 ¶ 15.  The April 22, 2003, sale was held at 11:00 a.m. in Anaheim, California, and the Equipment sold brought in $92,000, which Plaintiff avers is the reasonable market value of those pieces.  Id. ex. 1 ¶¶ 16-18.

Ung was notified of the July 23, 2003, sale by letter dated July 10, 2003, sent by certified mail, return receipt requested, and by first class mail, postage prepaid to Ung at his address in Long Beach, California.  Id. ex. 1 ¶ 19; ex. 1-G.  The notice sent by certified mail was signed for on July 12, 2003, although the signature is illegible, and the notice sent by first class mail was never returned to Plaintiff.  Id.  Notice of the sale was also

published in The Orange County Register on July 13, 2003, and July 20, 2003.  Id. ex. 1 ¶ 20; ex. 1-H.  Additionally, Plaintiff notified other potentially interested parties of the public sale by first class mail.  Id. ex. 1 ¶ 20.  The July 23, 2003, sale was held at 11:00 a.m. in Anaheim, California, and the Equipment sold brought in $5,900, which Plaintiff avers is the reasonable market value of those pieces.  Id. ex. 1 ¶¶ 21-23.

According to Plaintiff, the total expenses of advertising, preparing for, and conducting the public sales were $9,922.43.  Id. ex. 1 ¶ 24.  After crediting the proceeds of the public sales, there remained due and owing on the Note a balance of $112,695.46 as of July 23, 2003, together with interest and attorneys' fees.  Id. ex. 1 ¶ 27.  Prejudgment interest has been accruing at a rate of 18% per annum since July 23, 2003, for a total of $50,629.59 as of January 19, 2006, and will continue to accrue at a rate of $55.58 per day until the entry of judgment.  Id. ex. 1 ¶ 28, ex. 1-A; *see also* Document No. 8 ex. 1 ¶ 11, Document No. 17.  Plaintiff therefore moves for summary judgment against Ung, seeking a judgment in the amount of $112,695.46 plus prejudgment interest at a rate of $55.58 per day since July 23, 2003, post-judgment interest, and costs of court.[3]

---

[3] Plaintiff has already recovered a default judgment against Tum in the same amount. *See* Document No. 17.  That default judgment was interlocutory and therefore should not have specified a post-judgment rate of interest, which can only be determined when a Final Judgment is signed.  Moreover, the correct daily rate of

## II. Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct.

---

prejudgment interest after January 19, 2006, is $55.57 per day, not $55.58. Accordingly, the Default Judgment entered March 8, 2006, is REFORMED to correct the foregoing prejudgment daily interest rate and to delete the post-judgment rate of interest.

2505, 2513 (1986).  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  <u>Kelley v. Price-Macemon, Inc.</u>, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing <u>Matsushita</u>, 106 S. Ct. at 1351).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  <u>Id.</u>  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  <u>Anderson</u>, 106 S. Ct. at 2513.

A motion for summary judgment "cannot be granted simply because there is no opposition."  <u>Hetzel v. Bethlehem Steel Corp.</u>, 50 F.3d 360, 362 n.3 (5th Cir. 1995).  When no response is filed, however, the Court may accept as undisputed the facts set forth in support of the unopposed motion and grant summary judgment when a prima facie showing for entitlement to judgment is made.  *See* <u>Eversley v. MBank Dallas</u>, 843 F.2d 172, 174 (5th Cir. 1988); <u>Rayha v. United Parcel Serv., Inc.</u>, 940 F. Supp. 1066, 1068 (S.D. Tex. 1996) (Gilmore, J.).

III. <u>Discussion</u>

Plaintiff contends that the summary judgment evidence conclusively establishes its claim against Ung, such that Plaintiff is entitled to a judgment for the $112,695.46 deficiency due and owing under the Note, plus prejudgment and post-judgment interest and costs of court. Ung does not dispute that he signed the Guaranty, that Plaintiff is the legal holder and owner of the Guaranty, and that $112,695.46 is due and owing under the Guaranty. Nonetheless, Ung argues that he should not be required to perform on the Guaranty because (1) Computerized acted in a way not originally contemplated by Ung by increasing the amount of its obligations to Plaintiff, thereby discharging Ung's obligation as a surety, *see* Cal. Civ. Code § 2819; (2) the Guaranty was implicitly revoked by Ung when he left Computerized in February 2000, *see* Cal. Civ. Code § 2815; (3) there is a presumption against finding that a guaranty is continuing under California law; and (4) Plaintiff may have failed to act in a commercially reasonable manner in conducting the public sales.[4]

---

[4] The parties appear to agree that California law governs the Guaranty. *See* Document No. 9 ex. 1-D ("THIS GUARANTY AND ALL DOCUMENTS EXECUTED IN CONNECTION HEREWITH SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF RESIDENCE OR PRINCIPAL PLACE OF BUSINESS OF THE UNDERSIGNED OR THE LAWS OF THE STATE IN WHICH [PLAINTIFF] ACCEPT[S] THIS GUARANTY (WHICHEVER RENDERS THIS GUARANTY AND EACH OF ITS TERMS EFFECTIVE")).

Ung first claims that he was exonerated from performing on the Guaranty by virtue of California Civil Code § 2819, which provides in material part:

> A surety is exonerated, except so far as he or she may be indemnified by the principal, if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect . . . .

CAL. CIV. CODE § 2819. However, Ung, as surety, waived the protections of § 2819 when he agreed in the Guaranty, *inter alia*, (1) to be directly and unconditionally liable to Plaintiff for Computerized's debts to Plaintiff, including "any and all future renewals, modifications, amendments, extensions, increases, and/or supplements thereof, whether previously, contemporaneously or subsequently created or incurred . . . whether now or in the future arising, existing, incurred, contracted or owing"; (2) to "waive[] any and all notices to which [he] may be entitled"; and (3) to "waive[] any and all notice of and consent[] to any and all arrangements and agreements" between Plaintiff and Computerized without lessening Ung's liability under the Guaranty. *See* Bloom v. Bender, 313 P.2d 568, 572 (Cal. 1957) ("[W]here the surety consents to an alteration of the original obligation of the principal, . . . the surety is not exonerated."); State Bd. of Equalization v. Carleton, 273 Cal. Rptr. 436, 438 (Cal. Ct. App. 1990) ("Consent to such changes may be given in advance in the contract for the

performance of the suretyship obligation."); Krueger v. Bank of Am., 193 Cal. Rptr. 322, 328-29 (Cal. Ct. App. 1983) ("[I]n executing their general continuing guarantees . . . the Kruegers gave advance consent to subsequent modifications, material or immaterial, of the GRD loan obligations.  Such consent precludes the Kruegers from now claiming they are exonerated on their obligations under the guarantees."); *see also* FDIC v. Valmark, 156 F.3d 1236, 1998 WL 538059, at *2 (9th Cir. Aug. 21, 1998) (unpublished) (same).  Accordingly, § 2819 does not exonerate Ung from his obligations under the Guaranty.

Ung also argues that he implicitly revoked the Guaranty when he resigned his position with Computerized.  According to Ung, he signed the Guaranty in his capacity as a shareholder of Computerized.  *See* Document No. 11 ex. 1 ¶ 3.  Ung avers that he ceased to be affiliated with Computerized as a shareholder or otherwise in February 2000, when he offered a formal letter of resignation and transferred his equity interest to Computerized's CFO, Maria Tum.  Id. ex. 1 ¶ 2.  Thus, Ung argues, he had severed all ties with Computerized--including disavowing any obligations to Computerized--approximately 11 months before the Note and Agreement were executed, and it is Defendant Johnson Tum, who, as the only active corporate officer of Computerized when the Note and Agreement were executed, is the appropriate party against whom

Plaintiff should seek to enforce the Guaranty.  Id. ex. 1 ¶ 5; *see also* Document No. 20 ¶ 9.

Although § 2815 of the California Civil Code provides that "[a] continuing guarantee may be revoked at any time by the guarantor, in respect to future transactions," *see* CAL. CIV. CODE § 2815, the Guaranty expressly requires any such revocation to be in writing.  *See* Document No. 9 ex. 1-D ("[T]his is a continuing guaranty which shall remain in full force and effect, regardless of the death or dissolution of Guarantor, until full payment and performance of all Obligations, and thereafter until [Plaintiff's] actual receipt of a written notice of termination of Guarantor's obligations hereunder (any such notice of termination shall only affect transactions arising, incurred or created after [Plaintiff's] receipt thereof).").  Ung neither alleges nor presents any evidence that he ever provided a notice of revocation, written or otherwise, to Plaintiff.  Thus, regardless of what may have transpired between Ung and Computerized, Ung has failed to raise so much as a genuine issue of material fact that he delivered to Plaintiff and Plaintiff actually received a written notice of termination, which was required for Ung effectively to revoke his obligations under the Guaranty.

Ung next contends that a presumption against finding that a guaranty is continuing exists under California law and that the presumption applies to preclude summary judgment in this case.  The

11

presumption, however, only comes into play if the intention of the parties is not clearly manifested in the guaranty agreement.  *See* Zellerbach Paper Co. v. Virden Packing Co., 10 Cal. App. 2d 635, 645 (Cal. Dist. Ct. App. 1935).  In this case, the Guaranty expressly states that it is a "continuing guaranty" that applies to all "increases and/or supplements" to Computerized's obligations, "whether previously, contemporaneously, or subsequently created or incurred."  *See* Document No. 9 ex. 1-D.  Although Ung avers that it was his understanding and intent that the Guaranty was to secure the purchase of a particular piece of equipment, not that it was a continuing obligation regarding any additional debt, *see* Document No. 11 ex. 1 ¶ 3, the language of the Guaranty clearly and unambiguously demonstrates that it is a continuing guaranty.  Because there are no ambiguities in the Guaranty creating any uncertainty as to whether the parties intended the Guaranty to be continuing, parol evidence of the surrounding circumstances, including Ung's subjective understanding or intent, cannot vary or modify the terms of the Guaranty.  *See* Pac. State Bank v. Greene, 1 Cal. Rptr. 3d 739, 745-48 (Cal. Ct. App. 2003); Standard Oil Co. of Cal. v. Houser, 225 P.2d 539, 543 (Cal. Ct. App. 1950); *see also* Superior Wholesale Elec. Co. v. Cameron, 70 Cal. Rptr. 636, 639 (Cal. Ct. App. 1968); Berg Metals Corp. v. Wilson, 339 P.2d 869,

874 (Cal. Ct. App. 1959).[5]  By its plain terms, the Guaranty is a continuing guaranty.

Finally, Ung contends that Plaintiff "arguably may have failed to act in a commercially reasonable manner in the [public] sale[s] of the repossessed Equipment."  Document No. 11 ¶¶ 10-11.  Despite having been granted 60 days in which to conduct discovery and supplement his response brief on this issue, *see* Document No. 18, Ung has not come forward with any evidence to rebut Plaintiff's evidence that the sales were commercially reasonable, *see* Document No. 9 ex. 1 ¶¶ 13-25.  Ung's unsupported contention that the public sales may have been commercially unreasonably does not preclude summary judgment.

---

[5] Although Ung's counsel argues that Ung is "a Vietnamese immigrant with a command of the English language equivalent to that of a seventh grader," *see* Document No. 20 ¶ 8, Ung's affidavit reveals no such language deficiency, *see* Document No. 11 ex. 1, and there is no other summary judgment evidence indicating that Ung was incapable of reading and understanding the Guaranty.

Moreover, to the extent Ung faults Plaintiff for not speaking with him "about the significant nature of what he was signing when he executed the Guaranty," *see* Document No. 20 ¶ 8, Ung presents neither authority nor evidence that Plaintiff was under any obligation to discuss the Guaranty with and explain its terms to Ung.  Nor does Ung present any evidence that Plaintiff fraudulently induced him to execute the Guaranty, that there was a mutual mistake about the Guaranty's continuing nature, or that Plaintiff knew or suspected that Ung was mistaken about the continuing nature of the Guaranty when he signed it.  *See* CAL. CIV. CODE § 3399 ("When Contract May Be Revised"); *see also* Currin v. Currin, 271 P.2d 61, 66 (Cal. Ct. App. 1954) ("[T]he general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents and is estopped from saying that its provisions are contrary to his intentions or understanding.").  Thus, any misunderstanding that Ung may have had about the nature of the Guaranty has not been shown to relieve him from liability under the Guaranty.

In sum, none of the arguments raised or authority cited by Ung creates so much as a genuine issue of material fact that the Guaranty is unenforceable against Ung. Plaintiff's motion for summary judgment will therefore be granted.

## IV.  Order

Accordingly, it is hereby

ORDERED that Plaintiff Financial Federal Credit, Inc.'s Motion for Summary Judgment (Document No. 9) is GRANTED. Plaintiff shall have and recover of and from Defendant Gary Ung actual damages in the amount of $112,695.46; prejudgment interest thereon in the amount of $50,629.59 from and after July 23, 2003, through January 19, 2006, plus additional prejudgment interest at the contractual default rate of eighteen percent (18%) per annum in the amount of $55.57 per day from and after January 19, 2006, to the date hereof when judgment is entered, that is, $7,668.66, for a total judgment of $170,993.71 as of this date, plus post-judgment interest; and costs of court.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 7th day of June, 2006.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE